UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
TRUDY BEAUBRUN, on behalf of herself
and all others similarly situated,

                        Plaintiff,

      - v -

ERIC STREICH, P.C. and ERIC STREICH,
ESQ.,
                       Defendants.
------------------------------------------------------------x

**MEMORANDUM AND ORDER**

CV 06-6598 (VVP)

POHORELSKY, Magistrate Judge:

      The plaintiff and defendants (hereafter "the parties") have filed a joint motion seeking preliminary approval of a proposed class action settlement in this case concerning alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*[1] Specifically, the parties seek an order (1) certifying the proposed class for settlement purposes (hereafter "the settlement class"), (2) preliminarily approving the proposed terms of the settlement agreement, (3) directing and sending notice to the certified settlement class, and (4) setting dates for opt-outs, objections, and a Rule 23 fairness hearing. For the reasons set forth below, the motion is granted in part and deferred in part.

## BACKGROUND

      The unlawful conduct at issue involves the alleged practice by defendant law firm Eric Streich P.C., and the individual lawyer Eric Streich, Esq. ("defendants"), of sending out collection letters that do not conform with the FDCPA requirements. The complaint states the claim that, in violation of the FDCPA, the defendants' letter to the plaintiff and other class members improperly informed recipients that disputes as to the validity of the debt in question would have to be in writing, when the FDCPA contains no such requirement. (Compl. ¶¶ 20-23.)[2]

---

[1] The parties have consented to this court's jurisdiction for all purposes including entry of judgment pursuant to 28 U.S.C. § 636(c). (*See* Docket No. 9.)

[2] The applicable section of the FDCPA provides in pertinent part,

## DISCUSSION

### I. Court Approval of Class Action Settlements - Generally

Rule 23(e) governs the settlement of class actions.  The Rule, as amended in 2003, requires that "*the court* must approve any settlement, voluntary dismissal, or compromise of the claims . . . of a certified class."  Fed. R. Civ. P. 23(e)(1)(A) (emphasis added).  The court-approval requirement, as the advisory committee explained, is intended "to strengthen the process of reviewing proposed class-action settlements."  Fed. R. Civ. P. 23(e) advisory committee's note 2003 amendments.  The Committee noted in particular that while "[s]ettlement may be a desirable means of resolving a class action . . . court review and approval are essential to assure adequate representation of class members who have not participated in shaping the settlement."  *Id.*

### II. Certification of Settlement Class - Rule 23(a) and (b)

Before reaching the merits of the proposed settlement, however, the court must first ensure that the settlement class, as defined by the parties, is certifiable under the standards of Rule 23(a) and (b).  As the Second Circuit recently stated, "Before certification is proper for any purpose – settlement, litigation, or otherwise – a court must ensure that the requirements of Rule 23(a) and (b) have been met."  *Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006) (concluding in part that "the district court conducted a Rule 23(a) and (b) analysis that was properly independent of its Rule 23(e) fairness review"); *see also Reade-Alvarez v. Eltman, Eltman, & Cooper, P.C.*, 237 F.R.D. 26, 31(E.D.N.Y. 2006) ("Certification of a class for settlement purposes only is permissible and appropriate, provided [the] standards [under Rule 23(a) and (b)] are met.") (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619-21 (1997)).  The *Deutsche Bank* court further cautioned that "[t]hese requirements should not be watered

---

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall . . . send the consumer a written notice containing –
> . . .
>> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt or any portion thereof, the debt will be assumed to be valid by the debt collector;
> . . .

15 U.S.C. § 1692g(a).

down by virtue of the fact that the settlement is fair or equitable." 443 F.3d at 270. One must keep in mind, however, that courts in this circuit employ a " 'liberal rather than restrictive construction' " of Rule 23, " 'adopt[ing] a standard of flexibility' " in deciding whether to grant certification." *Reade-Alvarez*, 237 F.R.D. at 31 (quoting *Marisol A. v. Guiliani*, 126 F.3d 372, 377 (2d Cir. 1997)) (additional citation omitted).

The party seeking class certification bears the burden of establishing the existence of all four Rule 23(a) requirements, often referred to as the criteria of numerosity, commonality, typicality, and adequacy. *See Amchem*, 521 U.S. at 613; Fed. R. Civ. P. 23(a). "In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem*, 521 U.S. at 614.

The named plaintiff seeks to assert her FDCPA claim, which rests upon the legality of form collection letters allegedly sent by the defendants, on an individual and class-wide basis. The class members consist generally of those individuals who received a collection letter substantially similar to that received by the named plaintiff, and specifically of

> All persons who, according to [the defendants'] records: (a) have mailing addresses within New York State; and (b) between December 14, 2005 and December 13, 2006; (c) were sent a collection letter bearing Eric Streich, P.C.'s letterheard in a form materially identical or substantially similar to the letter sent to [the named plaintiff, Ms. Beaubrun], attached as Exhibit "A" to the Complaint; and (d) which was not returned by the postal service as undelivered.

(Class Action Settlement Agreement and Release ¶ 6, attached to Joint Mot. as Ex. A.) The court addresses the propriety of certification with respect to these allegations under Rule 23(a) and (b) in turn.

### A. Rule 23(a) Factors

The Supreme Court, in *Amchem*, set forth concisely the parameters of the Rule 23(a)[3] inquiry:

> Rule 23(a) states four threshold requirements applicable to all class actions: (1) numerosity (a "class [so large] that joinder of all members is impracticable"); (2) commonality ("questions of law or fact common to the class"); (3) typicality (named parties' claims or defenses "are typical ⋯ of the class"); and (4) adequacy of representation (representatives "will fairly and adequately protect the interests of the class").

521 U.S. at 613.

#### 1. Rule 23(a)(1) – Numerosity

Turning first to the numerosity requirement, the court focuses on whether the "num[ber] of injured persons makes joinder of all class members 'impracticable.' " *Edge v. C. Tech Collections, Inc.*, 203 F.R.D. 85, 89 (E.D.N.Y. 2001) (citing *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993)). "Impracticability" in this context means " 'difficulty or inconvenience of joinder' " rather than " 'impossibility of joinder.' " *In re Indep. Energy Holdings PLC Sec. Litig.*, 210 F.R.D. 476, 479 (S.D.N.Y. 2002) (citation omitted). Courts in this circuit generally "find a class sufficiently numerous when it comprises forty or more members." *Edge*, 203 F.R.D. at 89 (citing *Robidoux*, 987 F.2d at 936). While "a precise quantification of [the] class" is not required, "some evidence . . . or [a] reasonabl[e] estimate [of] the number of class members" must be provided. *Edge*, 203 F.R.D. at 89 (quoting *Pecere v. Empire Blue Cross and Blue Shield*, 194 F.R.D. 66, 69 (E.D.N.Y. 2000)) (internal quotations and additional citation omitted). Finally, in determining numerosity, the court may make some "common sense assumptions," *id.*, and "rely on reasonable inferences drawn from the available facts," *Velez v. Majik Cleaning*

---

[3]The Rule provides that,

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

*Serv., Inc.*, No. 03-Civ-8698, 2005 WL 106895, at *2 (S.D.N.Y. Jan. 19, 2005) (footnote, citation, and internal quotations omitted).

The numerosity requirement is clearly satisfied here. The proposed class, as estimated by the parties in their joint motion, consists of 1,572 members. (Joint Mot. ¶ 4(e).) This number is based on the records kept by the defendants from previous mailings of collection letters. (Joint Mot. Ex. A ¶ 2.) The facts and circumstances therefore warrant a finding of numerosity under Rule 23(a)(1).

### 2. Rule 23(a)(2) – Commonality

Commonality in the class certification context refers to the need for "questions of law or fact common to the class," Fed. R. Civ. P. 23(a)(2); *see Reade-Alvarez*, 237 F.R.D. at 32 ("Commonality requires that class members' claims share a common question of law or fact.") (citing *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001)), and may be found when " 'injuries derive from a unitary course of conduct by a single system.' " *Reade-Alvarez*, 237 F.R.D. at 26 (quoting *Marisol A.,* 126 F.3d at 377). Rule 23(a)(2), however, "does not require that all questions of law or fact raised be common," *D'Alauro v. GC Servs. Ltd. P'ship*, 168 F.R.D. 451, 456 (E.D.N.Y. 1996) (citation omitted), and a sufficient showing is possible even where "a single common question" exists, *Velez*, 2005 WL 106895, at *2 (footnote and citation omitted).

Here, the proposed class members' claims all share a common issue regarding the receipt of collection letters which were in alleged nonconformance with FDCPA requirements. (*See* Compl. ¶ 20-23.) As Judge Spatt has observed, "In cases where FDCPA plaintiffs have received similar debt collection letters from the defendants' mailing as the basis of the lawsuit, courts have found common questions of law or fact sufficient to certify the class." *D'Alauro*, 168 F.R.D. at 456 (collecting cases); *see also Reade-Alvarez*, 237 F.R.D. at 32 (finding commonality where "[t]he claims all allege violations of the Fair Debt Collection Practices Act," based on allegations that defendants sent illicit collection letters to plaintiffs). Accordingly, the commonality requirement under Rule 23(a)(2) is satisfied.

### 3. Rule 23(a)(3) – Typicality

A sufficient showing of Rule 23(a)(3) "typicality" "requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim

arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability. " *Reade-Alvarez*, 237 F.R.D. at 32 (quoting *Robinson*, 267 F.3d at 155). Put another way, "[w]hen the same unlawful conduct was directed at both the named plaintiff and the class to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims." *D'Alauro*, 168 F.R.D. at 456-57 (internal quotations and citations omitted). The purpose of this requirement is to "ensure[] that maintenance of a class action is economical and [that] the named plaintiff's claims and the class claims are so interrelated that the interest of the class members will be fairly and adequately protected in their absence." *In re Risk Mgmt. Alternatives, Inc., Fair Debt Collection Practices Act Litig.* (*In re Risk Mgmt. Alternatives Litig.*), 208 F.R.D. 493, 505 (S.D.N.Y. 2002) (citing *Marisol A.*, 126 F.3d at 376) (internal quotation and citation omitted).

The claim of the class representative, Ms. Beaubrun, is based on the same allegedly unlawful conduct as the conduct underlying the claims of the proposed class members. Stripped to its essentials, the claims of both the class representative and the proposed class members rest upon allegations that they were sent identical collection letters by the defendants which did not conform to FDCPA requirements. The successful prosecution of both claims would therefore require the named plaintiff to make legal arguments similar to those of the proposed class members, i.e., that relief is warranted under FDCPA provisions governing collection letters. This satisfies the court "that the interest of the class members will be fairly and adequately protected in their absence," *In re Risk Mgmt. Alternatives Litig.*, 208 F.R.D. at 505 (citation omitted). Accordingly, Rule 23(a)(3)'s typicality requirement is satisfied.

### 4. Rule 23(a)(4) – Adequacy of Representation

Finally, the parties seeking class certification must show that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Meeting this so-called "adequacy" requirement requires the establishment of two elements: "(1) the representative plaintiffs' attorneys must be qualified, experienced, and generally able to conduct the litigation, and (2) the plaintiffs' interests must not be antagonistic to those of the remainder of the class." *Reade-Alvarez*, 237 F.R.D. at 33 (citing *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)). The first element is met here. While counsel for the plaintiff, Mr. Brian L. Bromberg, has not supplied this court with a profile attesting to his

experience in class action litigation, a quick query on Westlaw has uncovered numerous other FDCPA class action cases which Mr. Bromberg has prosecuted in the past. *See, e.g.*, *Meselsohn v. Lerman,* 485 F. Supp. 2d 215 (E.D.N.Y. 2007) (Spatt, J.); *Ayzelman v. Statewide Credit Servs. Corp.*, 242 F.R.D. 23 (E.D.N.Y. 2007) (Pollak, Mag. J.)*; Cinelli v. MCS Claim Servs., Inc.*, 236 F.R.D. 118 (E.D.N.Y. 2006) (Boyle, Mag. J.); *Larsen v. JBC Legal Group, P.C.*, 235 F.R.D. 191 (E.D.N.Y. 2006) (Boyle, Mag. J.); *Mailloux v. Arrow Fin. Servs., LLC*, 204 F.R.D. 38 (E.D.N.Y. 2001) (Trager, J.). The court is therefore satisfied that Mr. Bromberg is qualified, experienced, and generally able to conduct the present action.

As to the second element, the court is not aware of any antagonistic interests harbored by the plaintiff toward the proposed class members.[4] Nor have the parties pointed to the existence of any conflicting interests. In any event, the interests of the plaintiff are sufficiently aligned with those of the proposed class members to qualify for certification. Litigation of the plaintiff's claim will inevitably involve rather straightforward proof regarding the content of the collection letter she received from the defendants and whether the letter failed to comply with the requirements of the FDCPA, proof that is also central to the prosecution of the proposed class members' claims. Therefore, little, if any, risk exists that the plaintiff would not vigorously pursue the prosecution of the class action on behalf of the proposed class members. Accordingly, Rule 23(a)(4)'s adequacy requirement is satisfied.

### B. Rule 23(b) - Class Actions Maintainable

As all Rule 23(a) requirements are met, certification now hinges upon whether the class action is maintainable under Rule 23(b)(1), (2), or (3). *Amchem*, 521 U.S. at 614. The parties propose certification of the class action under subsection (b)(3) (*see* Joint Mot. ¶ 3(a)- (e)), and the court agrees certification under that subdivision is proper here.

Rule 23(b)(3) requires a showing "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and

---

[4]The court notes that a conflicting interest which would justify denial of class certification is not easily shown. As one court has observed, "in order to warrant denial of class certification, it must be shown that any asserted 'conflict' is so palpable as to outweigh the substantial interest of every member in proceeding with the litigation." *In re NASDAQ Market-Makers Antitrust Litig.* (*In re NASDAQ Antitrust Litig.*), 169 F.R.D. 493, 514-15 (S.D.N.Y. 1996).

that a class action is superior to other available methods for fair and efficient adjudication of the controversy," Fed. R. Civ. P. 23(b)(3). The "matters pertinent" to the court's Rule 23(b)(3) analysis include,

> (A) [T]he interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D).

The Rule 23(b)(3) test is, on one hand, less arduous in the settlement context, since the Supreme Court has recognized that where a settlement class is involved, "a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620. Yet, the Court left no doubt in *Amchem* that "other specifications of the Rule – those designed to protect the absentees by blocking unwarranted or overbroad class definitions – demand undiluted, even heightened, attention in the settlement context." *Id.; accord In re Initial Public Offering Sec. Litig.* (*In re IPO Litig.*), 226 F.R.D. 186, 190 (S.D.N.Y. 2005); *see also Deutsche Bank*, 443 F.3d at 270 ("[T]he Rule 23(e) inquiry into the fairness of a settlement cannot supplant the inquiries under Rules 23(a) and (b) regarding whether the requirements for class certification have been met.") (citing *Amchem*, 521 U.S. at 616-21).

In carrying out its Rule 23(b)(3) analysis, the court recognizes that substantial authority supports certification of FDCPA class actions under subsection (b)(3). *See, e.g.*, *McCall v. Drive Fin. Servs., L.P.*, 236 F.R.D. 246, 254 (E.D. Pa. 2006) (finding Rule 23(b)(3) applicable for class certification in FDCPA case involving collection letters); *Reade-Alvarez*, 237 F.R.D. at 31 (same); *Gross v. Washington Mut. Bank*, No. 02-CV-4135, 2006 WL 318814, at *3 (E.D.N.Y. Feb. 9, 2006) (Levy, Mag. J.) (same); *Bonnet v. Educ. Debt Servs., Inc.*, No. 01-6528, 2003 WL 21658267, at *4 (E.D. Pa. May 9, 2003) (same); *Mailloux*, 204 F.R.D. at 42-43 (same); *D'Alauro*, 168 F.R.D. at 458-59 (same).

The court turns first to Rule 23(b)(3)'s predominance requirement. In doing so, the court notes initially that Rule 23(b)(3) "[p]redominance is a test readily met in certain cases alleging

consumer or securities fraud . . . ." *Amchem*, 521 U.S. at 625 (citations omitted). Furthermore, "it has been recognized in this district that 'common questions of law and fact surrounding the contents and mailing of [standardized form collection] letters predominate over individual issues." *See Mailloux*, 204 F.R.D. at 43 (quoting *Harrison v. Great Springwaters of Am., Inc.*, No. 96-CV-5110, 1997 WL 469996, at *9 (E.D.N.Y. June 18, 1997) (additional citation omitted)). For further guidance in applying the predominance test, the court looks to the Second Circuit's opinion in *Moore v. PaineWebber, Inc.*, 306 F.3d 1247 (2d Cir. 2002):

> "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." [*Amchem*, 521 U.S. at 623]. It is a more demanding criterion than the commonality inquiry under Rule 23(a). [*Id.* at 623-24]. Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof. [*In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 132 (2d Cir. 2001)].

306 F.3d at 1252.

There is little doubt that resolution of the key factual and legal issue here – specifically, whether the defendants violated the FDCPA by sending collection letters *en masse* without complying with FDCPA requirements – can be readily resolved through "generalized proof." This issue relating to the FDCPA also constitutes the crux of the proposed class action and is therefore "more substantial than the issues subject only to individualized proof," *Moore*, 306 F.3d at 1252 (citation omitted), if indeed any such individualized inquiries exist. Accordingly, Rule 23(b)(3)'s predominance requirement is satisfied.

As to Rule 23(b)(3)'s superiority requirement, the court finds that the proposed class action satisfies this element as well. As the court in *D'Alauro* observed, class actions are found to be the superior method of litigation "when the main objectives of Rule 23 are served," including "the efficient resolution of the claims or liabilities of many individuals in a single action, as well as the elimination of repetitious litigation and possibly inconsistent adjudications." 168 F.R.D. at 458 (citing *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)). Allowing the present case to proceed as a class action would be an efficient means of resolving the claims at issue, where there exists more than 1,500 proposed class members, and each

member possesses a claim based on form collection letters sent by the defendants in apparent violation of the FDCPA. Moreover, aggregating all possible FDCPA claims based on the form collection letters will eliminate the potential for "repetitious litigation" and "inconsistent adjudications" if the claims were brought separately, *D'Alauro*, 168 F.R.D. at 458 (citation omitted), and, which otherwise "might stand in the way of a beneficial comprehensive settlement," *Reade-Alvarez*, 237 F.R.D. at 33. Accordingly, Rule 23(b)(3)'s superiority requirement is satisfied as well.

The Rule 23(a) and (b)(3) requirements having been met, the following settlement class is hereby certified:

> All persons who, according to [the defendants'] records: (a) have mailing addresses within New York State; and (b) between December 14, 2005 and December 13, 2006; (c) were sent a collection letter bearing Eric Streich, P.C.'s letterheard in a form materially identical or substantially similar to the letter sent to [the named plaintiff, Ms. Beaubrun], attached as Exhibit "A" to the Complaint; and (d) which was not returned by the postal service as undelivered.

(Joint Settlement Agreement and Release ¶ 6, attached to Joint Mot. as Ex. A.) As a final matter, the court notes that the parties appear to seek certification of the proposed settlement class on a conditional basis, meaning that in the event the settlement is not consummated, the class would be automatically de-certified. The Second Circuit has expressly endorsed this approach to class certification, *Deutsche Bank*, 443 F.3d at 270 ("[I]f the requirements of Rule 23(a) and (b) are met, certification may be granted, conditionally or unconditionally."), and the proposed settlement class as delineated above is therefore certified on a conditional basis as well.[5]

---

[5]The Preliminary Approval Order proposed by the parties does not expressly provide for conditional class certification as was the case in *Deutsche Bank*, but instead seeks a return to pre-settlement positions for the respective parties in the event settlement is not approved or consummated. *Compare Deutsche Bank*, 443 F.3d at 269 (Preliminary Order there provided in pertinent part, "As agreed in the Stipulation of Settlement, if for any reason . . . the Court declines to grant final approval of the Settlement, then the certification of the Class shall become null and void without further Court action.") *with* (Proposed Prelim. Approval Order ¶ 2 ("If the above Settlement is not given final approval for any reason or in any way . . . the Parties shall be restored to their respective positions in the Action as of the approximate date prior to which the agreement-in-principle to settle the Action was reached. In such event, the terms and provisions of the Agreement shall have no further force and effect with respect to the Parties . . . .").) Nevertheless, the effect on class certification in the event of non-settlement under the present terms is no different than what would have resulted under the *Deutsche Bank* provision. Conditional class certification is therefore warranted here.

### III.    Preliminary Approval of the Proposed Settlement – Legal Standard and Analysis

Having certified the settlement class, the court now turns to the merits of the proposed settlement.  In carrying out this inquiry the court is guided by the Second Circuit's recognition that public policy favors the settlement of class actions.  *See Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 328 (S.D.N.Y.) (" 'There is a 'strong judicial policy in favor of settlements, particularly in the class action context.' 'The compromise of complex litigation is encouraged by the courts and favored by public policy.' ") (footnotes and citations omitted), *aff'd in part and vacated in part*, 443 F.3d 253 (2d Cir. 2005).  As Judge Weinstein has explained, "Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation.  There is a strong public interest in quieting any litigation; this is 'particularly true in class actions.' " *In re Luxottica Group S.P.A. Sec. Litig.* (*In re Luxottica Group Litig.*), 233 F.R.D. 306, 310 (E.D.N.Y. 2006) (citations omitted).

That does not mean, however, that courts may "rubber stamp approval in favor of an independent evaluation."  *Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974), *abrogated on other grounds*, *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).  To the contrary, final approval of any proposed class settlement requires "careful balancing," *In re Luxottica Group Litig.*, 233 F.R.D. at 310, of the three Rule 23(e) factors, "fair[ness], reasonable[ness], and adequa[cy]," Fed. R. Civ. P. 23(e)(1)(C).

As part of Rule 23(e)'s "fairness, reasonableness, and adequacy" inquiry the court must first determine whether the terms of the proposed settlement warrant "preliminary approval." *See* Fed. R. Civ. P. 23(e)(1)(B)-(C).  Preliminary approval is a two-step process.  *See In re IPO Litig.*, 226 F.R.D. at 191; *In re NASDAQ Market-Makers Antitrust Litig.* (*In re NASDAQ Antitrust Litig.*), 169 F.R.D. 493, 102 (S.D.N.Y. 1996) (citing Fed. R. Civ. P. 23(e); Manual for Complex Litigation (Third) § 30.41 (1995)).  First, the court  "make[s] a preliminary evaluation of the fairness of the settlement."  *In re NASDAQ Antitrust Litig.*, 176 F.R.D. at 102.  Thus, "[w]here the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within range of possible approval,

preliminary approval is granted." *Id.* (citing Manual for Complex Litigation (Third) § 30.41 (1995)); *accord In re IPO Litig.*, 226 F.R.D. at 191.[6] Upon preliminary approval, the court "must direct the preparation of notice of the certification of the settlement class, the proposed settlement and the date of the final fairness hearing." *In re IPO Litig.*, 226 F.R.D. at 191. At the fairness hearing, "[c]lass members (and non-settling defendants whose rights may be affected by the proposed settlement) then have an opportunity to present their views of the proposed settlement, and the parties may present arguments and evidence for and against the terms, before the court makes a final determination as to whether the proposed settlement is 'fair, reasonable, and adequate.' " *Id.* (citing Manual for Complex Litigation (Fourth) § 21.632-21.635 (2004)).

Under the terms of the proposed settlement, the defendants would establish a fund totaling $7,954 (hereinafter "Settlement Fund"). The Settlement Fund apparently represents one percent of the defendants' combined net worth (Proposed Prelim. Approval Order ¶ 2), the maximum recovery allowable for FDCPA class actions. *See* 15 U.S.C. § 1692k(a)(2)(B)(ii). The parties propose that the Settlement Fund be divided in the following manner: Ms. Beaubrun receives $1,000 in FDCPA statutory damages and in compensation for her role as the named plaintiff, *see* 15 U.S.C. § 1692k(a)(2)(B)(i), while the other class members, which the parties estimate to number approximately 1,572 are compensated on a *pro rata* basis (Proposed Prelim. Approval Order. ¶ 2; Joint Mot. ¶ 4(e)). Finally, in the event any part of the fund is not dispensed "from uncashed, expired Settlement Checks," a *cy pres* award in the remaining

---

[6]Courts in this circuit generally apply a set of nine factors, also known as the *Grinnell* factors, when assessing the fairness of a proposed class settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (quoting *Grinnell*, 495 F.2d at 463). Significantly, some of these courts have applied the *Grinnell* factors at the preliminary approval stage. *See, e.g.*, *Reade-Alvarez*, 237 F.R.D. at 34; *Gross*, 2006 WL 318814, at *4. Little is gained, however, in applying *Grinnell* at such an early stage since the proposed settlement has yet to be tested in a fairness hearing, after which the court would still be required to "make[] a final determination as to whether the proposed settlement is 'fair, reasonable and adequate.' " *In re IPO Litig.*, 226 F.R.D. at 191 (footnote and citation omitted). Furthermore, it is apparent that several of the *Grinnell* factors themselves were designed for application at a later stage in the class settlement approval process. The *Reade-Alvarez* court acknowledged as much when it stated that "[c]learly, some of [the *Grinnell*] factors, particularly the reaction of the class to the settlement, are impossible to weigh prior to notice and a hearing." 237 F.R.D. at 34. Application of the *Grinnell* factors will therefore be postponed until the proposed settlement is ready for final approval.

amount would be paid over in equal parts to the Neighborhood Economic Development Advocacy Project (NEDAP) in New York City. (*Id.*)

As part of the proposed settlement, the settling defendants will pay class counsel a fee of $15,000, separate and apart from the Settlement Fund. (Proposed Prelim. Approval Order ¶ 2.) Class counsel will submit time sheets and other pertinent documentation in support of this fee award when moving for final approval of the proposed settlement (Class Action Settlement Agreement ¶ 4), at which time the court will assess the propriety of such award. Even so, it should be noted at this preliminary stage that, in testing class action attorneys' fees awards, courts must be particularly vigilant in guarding against the award of "windfall fees" or even the "appearance of having done so" such that "their own integrity, the integrity of the legal profession, and the integrity of Rule 23" are not eroded. *Grinnell*, 495 F.2d at 469. As the *Grinnell* court elaborated further,

> If Rule 23 is to be preserved against deserved criticism, some attempt must be made by the court to suit the award of the fees to the performance of the individual counsel in light of the size of the settlement. Otherwise, the attorneys who are taking advantage of class actions to obtain lucrative fees will find themselves vulnerable to the criticism expressed in the Italian proverb, "A lawsuit is a fruit tree planted in a lawyer's garden."

*Id.* (quoting *Illinois v. Harper & Row Publishers*, 55 F.R.D. 221, 224 (N.D. Ill. 1972)). Given that the attorneys' fees contemplated by the settlement here constitute almost twice the amount of the recovery to be realized by the class, the court has a particular obligation to scrutinize the fees to be awarded.

At this preliminary stage, assuming that the defendants can adequately substantiate that their net worth does not exceed $795,400, and that the plaintiffs' counsel can support the fee award with appropriate documentation, the court finds the terms of the proposed settlement to be within "the range of possible approval." *In re NASDAQ Antitrust Litig.*, 176 F.R.D. at 102 (citation omitted). The plaintiff and the settling defendants assert that the settlement was reached after "extensive arm's-length settlement negotiations . . . ." (Joint Settlement Agreement and Release 2.) There is no indication at this point that the settlement was the product of collusion. Nor has the court found any "obvious deficiencies" warranting denial of preliminary approval status. Finally, no evidence exists that the proposed settlement accords the

class representative or any portion of the class "improper[] . . . preferential treatment." *In re NASDAQ Antitrust Litig.*, 176 F.R.D. at 102.  Accordingly, the proposed settlement is preliminarily approved.[7]

### IV.    Class Notice

For classes certified under Rule 23(b)(3), "the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 173 (1974) (construing Rule 23(c)(2)(B) and stating that "[i]ndividual notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort."). The Rule also requires that any such notice,

> must concisely and clearly state in plain, easily understood language:
> - the nature of the action,
> - the definition of the class certified,
> - the class claims, issues, or defenses,
> - that a class member may enter an appearance through counsel if the member so desires,
> - that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded, and
> - the binding effect of a class judgment on class members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B); *see also Reade-Alvarez*, 237 F.R.D. at 34-35 (citing *Weinberger v. Kendrick*, 698 F.2d 61, 70-71 (2d Cir. 1982)).

The parties have agreed to deliver notice by first class mail to each individual class member.  (Proposed Prelim. Approval Order ¶ 5.)  There is no indication that any of the class members cannot be identified through reasonable efforts. The court therefore finds the proposed manner of delivery sufficient under Rule 23(c)(2)(B).

As to the form and content of the proposed class notice, the court finds that the requirements of Rule 23(c)(2)(B) are satisfied.  A conference will be held, however, to discuss minor revisions which the court deems necessary as well as other matters relating to preliminary

---

[7]At the conference scheduled below, counsel should be prepared to advise the court concerning the proof that will be provided to substantiate the defendants' net worth.

approval identified above.  The parties are therefore directed not to proceed with notifying the class until the form and content of the proposed notice is approved by the court.

## CONCLUSION

Accordingly, the court certifies the class as defined above.  A conference is hereby scheduled for **December 17, 2007 at 12:00 noon** in Courtroom 13A of the United States Courthouse, Brooklyn, New York, at which time the court will address with counsel the anticipated proof regarding net worth, the form and content of the class notice, and dates for opting-out, objections, claim form returns, and a fairness hearing.  The court anticipates the entry of a preliminary approval order following the conference.

**SO ORDERED:**

*Viktor V. Pohorelsky*

VIKTOR V. POHORELSKY
United States Magistrate Judge

Dated: Brooklyn, New York
       December 4, 2007